UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:15-CR-107 |
| ) | |
| KATHY EVON FAWBUSH ) | |

**MEMORANDUM AND ORDER**

Now before the Court is the defendant's *pro se* 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release. [Doc. 552]. The United States has responded in opposition [docs. 554, 558] and the defendant has not replied within the time allowed by this court's Local Rules. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

In August 2017, this Court sentenced the defendant, as a Career Offender, to a 210-month term of imprisonment for conspiring to distribute and possess with the intent to distribute methamphetamine. But for the United States' motion for downward departure, the defendant faced a mandatory minimum sentence of Life. [Docs. 150, 465].

The defendant is presently housed at FMC Carswell with a projected release date of July 27, 2030. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited November 6, 2020). She now seeks compassionate release in light of the COVID-19 pandemic, her age, and various health conditions.

## II. DISCUSSION

Section 3582(c)(1)(A)(i) allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute,

as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to

2

provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id*. at *2 (citations omitted).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Exhaustion

In this case, the record demonstrates that the defendant has previously asked the BOP to file a compassionate relief motion on her behalf. [Doc. 554, exs. 1, 2]. Thirty days have passed since that request was received by the warden of her facility. [*Id.*]. The United States concedes [doc. 554, p. 5] that the Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

#### 1. Extraordinary and Compelling Reasons

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

3

(A) Medical Condition of the Defendant.—

(i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

  (I)   suffering from a serious physical or medical condition,

  (II)  suffering from a serious functional or cognitive impairment, or

  (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1.

BOP medical documentation submitted by the United States shows diagnoses of COPD, type 2 diabetes, obesity, high cholesterol, heart failure, supplemental oxygen dependence, hepatitis C, and partial wheelchair usage. [Doc. 558]. The defendant tested positive for COVID-19 in July 2020, and by the next month she developed pneumonia and COPD exacerbation, each of which resolved. [*Id.*].

Based on her documented diagnoses of diabetes, heart failure, COPD, and obesity, the United States concedes that the defendant has met her burden of showing an "extraordinary and compelling reason" for compassionate release. [Doc. 554, p. 8-9]. The Court's analysis therefore turns to § 3582(c)(1)(A)(i)'s and policy statement 1B1.13's remaining requirements.

## 2. Danger to Any Other Person or to the Community

The Court concludes that the defendant has not shown that she would not be a danger if released at this time. For that reason, her motion will be denied.

Guideline 1B1.13 provides that compassionate release is only appropriate where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2). Section 3142(g) outlines the factors the Court must consider in determining whether a defendant should be detained pending trial. Specifically, § 3142(g) provides:

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Court has considered the above-listed factors and has refamiliarized itself with the defendant's Presentence Investigation Report ("PSR"). [Doc. 210]. The Court has also considered the defendant's BOP SENTRY Report. To her credit, SENTRY shows that the defendant has not incurred any disciplinary sanctions during her current term of imprisonment.

As noted, the Court imposed a 210-month Career Offender sentence in this case. But for the United States' downward departure motion, the defendant faced a mandatory sentence of Life.

The PSR lists a 1992 conviction for drug possession, followed by 2011 convictions for drug delivery and attempted initiation of methamphetamine manufacture. [Doc. 210, ¶¶ 41-43]. The defendant's participation in the instant large-scale methamphetamine conspiracy then commenced in April 2014 and continued through October 2015. [*Id.*, ¶ 12].

In this conspiracy, the defendant sold methamphetamine from her home in quantities as high as one to eighteen ounces. [*Id.*, ¶¶ 14-19]. She did so both to "supply her own addiction" and to "make money." [*Id.*, ¶¶ 14, 25]. The defendant possessed kilogram quantities at a time. [*Id.*, ¶ 14]. She allowed the conspiracy's lead defendant to utilize her home "to store methamphetamine for him on multiple occasions and [he] also used her residence as a base of operations to distribute methamphetamine and collect drug debts when he was in East Tennessee." [*Id.*, ¶ 13].

6

The defendant was physically able to leave her home to "get[] more methamphetamine." [*Id.*, ¶ 15]. On one occasion, the defendant did not want a confidential source in her residence "since she did not know" that person, and the informant "was told to strip naked so that they could tell that [the informant] was not cooperating with law enforcement by wearing a wire." [*Id.*, ¶ 16]. Recently, another individual had been similarly treated. [*Id.*].

Clearly, the instant conspiracy was a dangerous one which distributed significant quantities of methamphetamine, and this defendant was near the heart of it. Sellers who dealt with her and her inner circle were placed in immediate danger, and the harm to her ultimate customers, their families, and their communities needs no explanation.

The defendant's health conditions did not keep her from participating in this conspiracy. Medical records cited in the PSR show that, at or prior to her involvement in this case, the defendant received treatment for bronchitis, hepatitis C, COPD, pain, pneumonia, hypertension, shortness of breath, and weakness in her legs—most of the very same conditions she now claims entitle her to compassionate release. [*Id.*, ¶¶ 59-60]. Additionally, the defendant was at that time obese. [*Id.*, ¶ 58]. These facts illustrate that the distribution of large quantities of controlled substances from one's home is a venture easily accomplished by a person in poor health, and the defendant's own health conditions have not prevented her from doing so.

The Court lastly notes a March 2015 recorded conversation between the defendant, her lead codefendant, and a confidential informant. [*Id.*, ¶ 13]. That conversation took place in the defendant's home. [*Id.*]. The informant and the codefendant "discussed the

7

sale of methamphetamine, prices, quantities and customers in considerable detail." [*Id.*]. <u>Strikingly</u>, the defendant "expressed relief that she did not go to jail on prior state court charges related to her probation *and that the judge gave her one more chance*." [*Id.*, ¶¶ 13, 42-43] (emphasis added). As shown in the preceding paragraphs, the defendant took advantage of that Hamblen County judge's "second chance" by continuing her involvement in a dangerous, massive, and incalculably harmful methamphetamine distribution conspiracy.

As explained herein, the Court does not find that the defendant would not pose a danger to the safety of another person or the community if released at this time. For this reason, her motion will be denied.

### 3. Section 3553(a) Factors

The facts underlying a review of the 18 U.S.C. 3553(a) factors in this case are essentially the same as those considered in the preceding section of this memorandum. The *substantial* requested sentence reduction would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or afford adequate deterrence, and would not adequately protect the public from future crimes. *See* 18 U.S.C. § 3553(a)(2). For these additional reasons, the defendant's compassionate release request will be denied.

### III. CONCLUSION

Having considered the issues raised by the defendant, individually and in combination, her motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [doc. 552] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge